# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                 Case No. 07-Cr-112

MAYNENG XIONG,
PAO XIONG,
and XEE VUE,

      Defendants.

# RECOMMENDATION TO THE HONORABLE
# WILLIAM C. GRIESBACH AND ORDER

On May 8, 2007, a federal grand jury sitting in this district returned a five-count indictment against defendants Mayneng Xiong, Pao Xiong and Xee Vue. The defendants are charged in Count One with conspiracy to commit arson and mail fraud in violation of 18 U.S.C. §§ 371 and 2. Defendants Mayneng Xiong and Pao Xiong are charged in Count Two with arson in violation of 18 U.S.C. §§ 844(i) and 2. Count Three charges Mayneng Xiong and Pao Xiong with mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Defendant Xee Vue is charged in Count Four with being an accessory after the fact in violation of 18 U.S.C. § 3. Count Five charges defendant Pao Xiong with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 2.

On May 17, 2007, the defendants appeared before United States District Judge William C. Griesbach for arraignment, entering pleas of not guilty. Pursuant to the pretrial scheduling order issued at that time, defendants Mayneng Xiong and Pao Xiong have filed

pretrial motions.  Defendant Mayneng Xiong has filed the following motions: 1) motion to strike surplusage from indictment (Docket #44); 2) motion to suppress regarding the search of 310 David Street (Docket #45); and 3) motion to suppress regarding the identical warrants for searches of 310 David Street and the Dodge van (Docket #46).  Defendant Pao Xiong has filed the following motions: 1) motion to suppress regarding the identical search warrants for search of 310 David St. and the Dodge van (Docket #38); 2) motion to suppress regarding the search of 310 David Street (Docket #39); 3) motion for pretrial determination of admissibility of alleged co-conspirators' statements (Docket #40); 4) motion to strike surplusage from indictment (Docket #41); 5) motion to sever Count Five of indictment (Docket #42); and 6) motion to sever defendant (Docket #43).  The government opposes the motions which will be addressed herein.

### MAYNENG XIONG AND PAO XIONG'S MOTIONS TO SUPPRESS REGARDING SEARCH OF 310 DAVID STREET (Docket #39 and #45)

Defendants Pao Xiong and Mayneng Xiong move the court for an order suppressing all physical evidence, information and fruits therefrom resulting from the January 12, 2006, search of their home at 310 David Street, Green Bay, Wisconsin.  These defendants assert two grounds in support of their motion:  1) the affidavit in support of the search warrant fails to establish probable cause for the search and 2) the warrant does not describe with particularity the place to be searched because it fails to indicate that the home to be searched was owned or occupied by anyone related to the ongoing criminal investigation.  The government opposes the motion.

- 2 -

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched."  As the Court explained in Maryland v. Garrison:

> The manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

480 U.S. 79, 84 (1987).   A warrant sufficiently particularizes the place to be searched if the executing officers "can with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925).  The search warrant should describe the places to be searched and objects to be seized with sufficient particularity to leave "nothing . . . to the discretion of the officer executing the warrant."  Andresen v. Maryland, 427 U.S. 463, 480 (1976) (quoting Stanton v. Texas, 379 U.S. 476, 485 [1965]) (other citation omitted). Thus, in assessing the sufficiency of the description in a search warrant, the court must determine whether the warrant describes the premises to be searched with sufficient particularity to enable the executing office to locate and identify the premises with reasonable effort and whether there is any reasonable probability that another location erroneously might be searched.  See United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994).

In this case, the search warrant for the residence described the place to be searched as follows:

> 310 David St. located in the city of Green Bay, WI.  A wood frame construction 2-story home with attached garage.  Grey in color with red shutters and a partial brick front on the home.  The home has a porch with wooden pillars in the front of the home.

- 3 -

(Joint Memorandum in Support of Mayneng Xiong's and Pao Xiong's Motions to Suppress Search of 310 David Street, Exh. A at 1). The warrant also delineates the items to be seized, including financial and business records related to TMX Mays Supermarket and personal financial records for defendant Mayneng Xiong. Id.

In asserting that the warrant fails to describe with particularity the place to be searched because it does not indicate that the residence was occupied by them, defendant Mayneng and Pao Xiong rely on Groh v. Ramirez, 540 U.S. 551, 559 (2004). In Groh, the application for the search warrant particularly described the place to be searched and the items to be seized. However, the warrant itself failed to identify any of the items to be seized and did not incorporate the application by reference. In the portion of the warrant form calling for a description of the "person or property" to be seized, the warrant merely provided a description of the house to be searched. The Court held that the warrant was "plainly invalid." Id. at 557. In explaining that the warrant was not saved from facial invalidity by the fact that the application described the things to be seized, the Court stated: "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Id. (citing Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 [1984]).

The facts in this case are clearly distinguishable. Here the warrant clearly describes the place to be searched by both address and physical description. Groh does not support the defendants' contention that to meet the particularity requirement of the Fourth Amendment, the search warrant must state that the home to be searched is owned or occupied by the defendants. The defendants cite no other authority to support this contention nor does the Fourth Amendment contains any such requirement. Based on the description

- 4 -

in the warrant, the officers executing the warrant in this case were readily able to "ascertain and identify" the place to be searched.  Steele, 267 U.S. at 503.

Moreover, unlike Groh, the warrant itself, as well the affidavit in support of the warrant, lists the specific items to be seized pursuant to the warrant.  Thus, the search warrant comports with Fourth Amendment which states unambiguously that "no warrants shall issue, but upon probable cause, supported by Oath or Affirmation and particularly describing the place to be searched and the persons or things to be seized."

Defendants Mayneng and Pao Xiong also maintain that the affidavit in support of the search warrant lacks probable cause for the search since it fails adequately to show that evidence of arson would be found at the residence.  The government asserts that direct evidence is not necessary to a probable cause determination and that it was reasonable for the issuing court commissioner to conclude that evidence relating to the arson would be found in the residence to be searched.

In determining whether probable cause exists to support a search warrant, the judge must consider the totality of the circumstances.  United States v. Brack, 188 F.3d 748, 755 (7th Cir. 1999) (citing Illinois v. Gates, 462 U.S. 213, 238 [1983]).  "The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005), cert. denied, 546 U.S. 1224 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 [1983]).

- 5 -

"Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). "Probable cause denotes more than mere suspicion, but does not require certainty." United States. v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990) (quoting United States v. Ellery, 678 F.2d 674, 677 [7th Cir. 1982]). "Probable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense." United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006) (internal quotation marks and citations omitted).

Thus, an "affidavit need not contain personal observations that such evidence was kept at the residences." McNeese, 901 F.2d at 596. A judge making a probable cause determination "need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . . He need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Malin, 908 F.2d 163, 166 (7th Cir. 1990) (emphasis in original) (quoting United States v. Peacock, 761 F.2d 1313, 1315 [9th Cir. 1985]); see also, United States v. Sleet, 54 F.3d 303, 306 (7th Cir. 1995).

In this case, the affidavit establishes that the residence to be searched is owned and occupied by Mayneng Xiong and Kong Meng Xiong, her son. (Affidavit in Support of Search Warrant [Aff.] ¶ 18). Defendant Mayneng Xiong is the owner of TMX Mays Supermarket. See Aff. ¶¶ 19, 21, 25, 33. A search warrant was obtained and executed at TMX Mays Supermarket, the scene of the fire on January 8, 2006. (Aff. ¶ 8). Pursuant to that warrant,

- 6 -

officers made observations and recovered evidence leading to the conclusion that the fire had been deliberately set.  (Aff. ¶¶ 11-17, 26).

The officers recovered ten empty bottles of 70% isopropyl alcohol, an ignitable liquid sometimes used in incendiary fires.  (Aff. ¶ 26).  Three plastic gasoline containers were recovered in different areas of the structure.  (Aff. ¶ 3).  The affidavit also recounts that defendant Mayneng Xiong told the affiant, Detective Glenn Deviley of the Green Bay Police Department, that she went to a party for a relative at about 5:00 p.m. on January 7, 2006, and stayed at the party until she was contacted about the fire about 12:30 a.m.  However, further investigation revealed that several hours before the discovery of the fire, she had purchased 12 bottles of isopropyl alcohol with the same bar code and lot numbers as those found at the fire scene at a Walmart store.

The affidavit further states that video footage from the Walmart store where the isopropyl alcohol was purchased showed that the purchaser of the isopropyl alcohol was a middle-aged Asian female.  (Aff. ¶ 29).  The affidavit states that Walmart Loss Prevention Associate Kenneth Remington subsequently recognized the Asian female, whom he had seen shopping at the Walmart Store in the past, as the same woman whom he saw interviewed regarding a fire at her Asian grocery store.  (Aff. ¶¶ 29, 32).

The affidavit states that Special Agent Rick Hankins of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives viewed the Walmart surveillance video and observed the same Asian female associated with the transaction exiting and later re-entering a large, white passenger van in the Walmart parking lot before and after the transaction.  (Aff. ¶¶ 28, 30).  The affiant states that he saw defendant Mayneng Xiong drive this van to the business during the fire scene investigation.  (Aff. ¶ 31).

- 7 -

Special Agent Kevin Heimerl of the Wisconsin Department of Justice, Division of Criminal Investigation, also observed the white van parked outside the business during the time defendant Mayneng Xiong was at a meeting with investigators. (Aff. ¶ 31). He checked the license plate with the Wisconsin Department of Transportation and the department's record lists the plate as assigned to a 1998 Dodge truck registered to May Neng Xiong at 310 David Street, Green Bay, Wisconsin. (Aff. ¶¶ 18, 31).

The affidavit further provides that, based on the affiant's training and experience and his consultation with a Green Bay police detective in the Computer Forensic Unit, there are web sites and areas of the internet providing information about fire setting methods and that such information, when viewed, is stored on a computer and may be recovered even if deleted. (Aff. ¶ 35). Defendant Mayneng Xiong maintained a property insurance policy for her business and had initiated the filing of an insurance claim as a result of the fire. (Aff. ¶ 33).

Although the affidavit does not contain direct evidence that the evidence sought was actually on the premises to be searched, the court commissioner could reasonably conclude that the evidence would be at the 310 David Street residence. See Malin, 908 F.2d at 166. (In making a probable cause determination, the judge need not determine "that the evidence is more likely than not to be found where the search takes place." Rather the issuing judge "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit"). The affidavit stated that defendant Mayneng Xiong had purchased first aid supplies and 12 bottles of isopropyl alcohol, ten of which were recovered at the store. It was reasonable to conclude that the two remaining bottles, as well as the receipts for this and other purchases related to the arson, would be at her residence. Also, as owner of the TMX

- 8 -

May Supermarket, defendant Mayneng Xiong had certain business financial and insurance records which reasonably would be kept at her residence or at least removed there prior to the fire. Similarly, the court finds that it was reasonable for the court commissioner to conclude that some store merchandise would be removed prior to the fire and relocated to defendant Mayneng Xiong's residence. Records evidencing occupancy or ownership of the residence and personal financial records would also likely be at her residence.

The defendants assert that, unlike the facts in Malin, the facts in United States v. Dickerson, 975 F.2d 1254 (7th Cir. 1992), are more similar to the facts in this case. In Dickerson, an armed bank robbery case, the officers obtained a consent to search the defendant's house after he refused to consent to a search of the residence. The probable cause affidavit presented to the judge "stated only that a witness saw the robber run from the bank to a car parked in the emergency lane of I-69 and the license plate of the car was registered to Dickerson at 4858 North Hillside. The affidavit did not even state that the car was parked at the house." Id. at 1250. The affidavit provided no facts to establish that evidence of a crime would be found inside the residence. The appeals court found it doubtful that the affidavit established probable cause to search the defendant's house, contrary to the conclusion of the trial court. Nonetheless, the appellate court concluded that the warrant was saved by the good faith exception to the exclusionary rule. Id.

_____ In this case, the affidavit establishes that defendant Mayneng Xiong was an owner of the David Street residence, as well as the TMS Mays Supermarket. She was identified as the woman who purchased 12 bottles of isopropyl alcohol, an ignitable liquid that is sometimes used in incendiary fires. Ten of the 12 bottles were recovered after the arson at defendant

- 9 -

Mayneng Xiong's store.   She had provided false information to the investigating officers about her whereabouts on the evening of January 8, 2006.  The officers established that defendant Mayneng Xiong drove a Dodge truck and that the truck was registered to her at 310 David Street.   Based on the information presented to him, including the training and experience of the affiant, the court commissioner issuing the warrant could reasonably conclude that evidence of the arson could be found at defendant Mayneng Xiong's residence. See Sleet, 54 F.3d at 306.  (The issuing court "is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense." Sleet, 54 F.3d at 306 [citation omitted]).  Thus, the facts of Dickerson are clearly distinguishable from the facts in this case.

In sum, considering the totality of the information in the affidavit, the court commissioner had a reasonable basis to conclude that defendant Mayneng Xiong, the owner of the supermarket involved in the arson, resided at the residence and that the evidence delineated in the search warrant would be found at that location.  See Malin, 908 F.2d at 166. Accordingly, the court concludes that probable cause supported the search of 310 David Street and that the search warrant met the particularity requirements of the Fourth Amendment.

Even if the court was to conclude that the affidavit failed to establish probable cause that evidence of a crime would be found at the residence, suppression of the evidence is not warranted.  In United States v. Leon, 468 U.S. 897, 926 (1984), the Supreme Court held that an officer's good faith reliance on a court's determination of probable cause should not lead to the exclusion of probative evidence simply because a reviewing court later determined that probable cause was lacking.  Thus, a facially valid warrant issued by a neutral, detached

magistrate will be upheld if the police relied on the warrant in good faith.  Id.  The decision to seek a warrant is prima facie evidence that the agent was acting in good faith.  United States v. Wiley, 475 F.3d 908, 917 (7th Cir. 2007) (citing United States v. Koerth, 312 F.3d 862, 866 [7th Cir. 2002]); Peck, 317 F.3d at 757.  "The defendant must defeat this presumption with evidence that the issuing magistrate judge wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Wiley, 475 F.3d at 917.

In this case, defendants Mayneng and Pao Xiong assert that Detective Glenn Deviley was reckless in submitting two identical warrants for searches of difference locations and that the issuing court commissioner abandoned his role as a neutral and detached judicial officer.  The court disagrees.  Although the affidavits in support of the search warrants are basically identical, the warrants themselves are not.  One warrant was for the search of the residence at 310 David Street, the other for a 1998 white Dodge truck registered to defendant Mayneng Xiong.  Given that both warrants relate to the same investigation – the arson at TMX Mays Supermarket – it is neither surprising nor unusual that the supporting affidavits for the search warrants contain virtually identical information.

The court notes that the affidavit in support of the search of the Dodge van does not specify the place to be searched.  Although the affiant may have been careless in failing to include the item to be searched in the affidavit, the search warrant presented to the court commissioner contained a detailed description of the vehicle.

The defendant argues that Detective Deviley cannot assert that he reasonably relied on the judge's assurance that the warrant was valid when he prepared the invalid warrant, citing Groh, 540 U.S. at 564.  The facts and circumstances of Groh are clearly distinguishable.

In Groh, a Bivens[1] action, the Court found the search warrant invalid because it totally failed to describe the items to be seized as explicitly required by the Fourth Amendment. Since the petitioner prepared the warrant, the Court stated that he could not argue that he reasonably relied on the magistrate judge's assurance that it contained an adequate description and was valid. In concluding that the petitioner was not entitled to qualified immunity, the Court found that the warrant was so facially deficient in failing to particularize the things to be seized that the petitioner could not reasonably presume it to be valid. Id. at 1294.

Here, the warrant met the particularity requirement of the Fourth Amendment and was not unconstitutional on its face. See Id. at 559. Therefore, under the circumstances, the court concludes that the omission of the description of the place to be searched from the affidavit does not rise to the level of recklessness warranting exclusion of the evidence.

Moreover, defendants Mayneng and Pao Xiong have merely stated in conclusory fashion that the court commissioner abandoned his role as a neutral and detached judicial officer. Such conclusory assertions are insufficient to call into question the validity of the search warrants in this case. There is no indication that the affidavit "was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Wiley, 475 F.3d at 917. Thus, the court finds that the officers relied on the warrant in good faith. See Leon, 468 U.S. at 926. Therefore, the court will recommend that the United States district judge enter an order denying the defendants' motions to suppress.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

- 12 -

## MAYNENG XIONG AND PAO XIONG'S MOTIONS TO SUPPRESS REGARDING
## IDENTICAL SEARCH WARRANTS FOR SEARCH OF
## 310 DAVID STREET AND THE DODGE VAN
### (Docket #38 and #46)

Defendants Mayneng Xiong and Pao Xiong seek suppression of evidence obtained from the search warrants for 310 David Street and the 1998 Dodge van on the grounds that the search warrants and the affidavits supporting the warrants are identical and, therefore, violate the Fourth Amendment's particularity requirement. The defendants point out that the search warrant for the home does not contain any information as to who owns or resides in the home, even though the warrant reads ". . . which premises are occupied or owned by , and are described as follows." (Joint Memorandum in Support of Mayneng Xiong's and Pao Xiong's Motions to Suppress Regarding Identical Warrants for Searches of 310 David Street and Dodge Van (Joint Memorandum - Identical Warrants] at 4 and Exh. A). They also note that the search warrant does not incorporate the affidavit by reference.[2]

With respect to the affidavit in support of the search warrant for the Dodge van, the defendants point out that the warrant describes the van, but that the supporting affidavit, which is not incorporated by reference, fails to include any description of the premises to be searched. The defendants also note that warrants were obtained on the same day and time. The government opposes the motion.

As noted, the Fourth Amendment requires that a warrant may only issue upon probable cause and must particularly describe the place to be searched. The places to be searched

---

[2]The court notes that the search warrants do not explicitly state that they incorporate the affidavits. However, both search warrants state that "Glenn Deviley, a law enforcement officer of the Green Bay Police Department, has this day complained to this court, under oath . . ." The clear implication is that the court commissioner was aware of, and considered the information in, the affidavits in support of the search warrants when issuing the warrants.

Case 1:07-cr-00112-WCG   Filed 09/14/07   Page 13 of 31   Document 62

and the objects to be seized must be described with sufficient particularity to leave "nothing

. . . to the discretion of the officer executing the warrant." Andersen, 427 U.S. at 480 (citations

omitted). A warrant sufficiently particularizes the place to be searched if the executing officers

"can with reasonable effort ascertain and identify the place intended." Steele, 267 U.S. at

503. A search warrant "must describe the objects of the search with reasonable specificity,

but need not be elaborately detailed." United States v. Shoffner, 826 F.2d 619, 630 (7th Cir.

1987) (internal citation omitted); see also, United States v. Jones, 54 F.3d 1285, 1290 (7th

Cir. 1995).

Here, the search warrant for 310 David Street identifies the property both by street

address and detailed physical description:

> A wood frame construction 2-story home with attached garage, grey in color
> with red shutters and a partial brick trim on the home. The home has a porch
> with wooden pillars in the front of the home.

(Joint Memorandum – Identical Warrants, Exh. A). The search warrant for the Dodge truck

describes the vehicle to be searched as follows:

> 1998 Dodge truck, white in color, bearing Vehicle Identification Number
> 2B7JB21Z7WK151013, Wisconsin License Plate BK-14494 registered to
> Mayneng Xiong dob 06/03/1955, 310 David Street, Green Bay, WI.

Id. Exh. B. Although the affidavit failed to include a description of the Dodge van, the search

warrant itself described the van with particularity.

Contrary to the defendants' contention, the two search warrants are not identical. Each

warrant describes a different place to be searched – 310 David Street and a 1998 white

Dodge truck. Moreover, United States v. Nafzger, 965 F.2d 213, 215 (7th Cir. 1992) cited by

the defendants, provides no support for their position and is clearly distinguishable. In

- 14 -

Nafziger, officers went to the defendant's farm to execute a search warrant for a specific stolen truck. Although describing the truck in detail, the warrant failed to state any "place" to be searched other than "the Western District of Wisconsin." In finding the warrant defective, the appeals court stated:

> By accepting "the Western District of Wisconsin" as a particular description of the place the truck was to be found we would be giving the government carte blanche to search anywhere in the district that the truck might conceivably be found, condoning the use of the pernicious general warrant, and redacting the particularity requirement from the fourth amendment.

965 F.2d at 216.

Here, the warrants specifically described the places to be searched and the items to be seized. The fact that the affidavits supporting the warrants are virtually identical does not implicate the particularity requirement of the Fourth Amendment in this case. It is not uncommon for basically identical affidavits to be submitted to a magistrate judge in support of searches at multiple locations involving a common investigation. However, the affidavits must establish probable cause as to each location to be searched and the items to be seized must be described with particularity. In fact, often a single affidavit setting forth facts to establish probable cause is submitted to the issuing judge in support of search warrants for several locations involved in one common investigation. In such case, the description of the places to be searched and the items to be seized are individualized and vary based on the location and supporting probable cause.

The defendants assert in their reply brief, without citation to any authority, that "[i]dentical warrants and affidavits fly in the face of particularity, because they allow general exploratory rummaging in *any* location at which the defendants may have been found." (Joint

- 15 -

Reply to Government's Response Regarding Identical Search Warrants at 3). The defendants' contention is without merit. It is automatic that a search warrant must be supported by probable cause. (U.S. Const., amend 4). Thus, when a single affidavit is submitted in support of multiple warrants, it must establish probable cause for each place to be searched and must describe with particularity the places to be searched and the things to be seized at each location. The fact that one affidavit is submitted in support of several search warrants is not problematic as long as the affidavit establishes probable cause for the searches and the warrants meet the requirements of the Fourth Amendment.

In this case, the court has carefully reviewed the affidavits and search warrants at issue. Based upon is review, the court concludes that the search warrants describe the places to be searched with sufficient particularity to meet the mandate of the Fourth Amendment. The warrants also describe with reasonable specificity the items to be seized pursuant to the warrants. Jones, 54 F.3d at 1290; Shoffner, 826 F.2d at 630. Therefore, the court will recommend to the United States district judge that the defendants' motions to suppress identical warrants be denied.

### MAYNENG XIONG AND PAO XIONG'S MOTIONS TO STRIKE SURPLUSAGE FROM INDICTMENT (Docket #41 and #44)

The defendants move to strike surplusage from the indictment, specifically paragraphs two and three of the alleged overt acts committed in furtherance of the conspiracy charged in Count One and any reference to 18 U.S.C. § 371. The government opposes the motion.

- 16 -

Count One charges defendant Mayneng Xiong, Pao Xiong and his girlfriend Xee Vue with conspiracy to commit arson and mail fraud in violation of 18 U.S.C. §§ 844(i) and 1341. Count One states in relevant part:

> In approximately December 2005 to the date of this indictment, in Green Bay, in the State and Eastern District of Wisconsin,
>
> **MAYNENG XIONG,**
> **PAO XIONG, a.k.a. "Danny," and**
> **XEE VUE**
>
> did knowingly and wilfully conspire and agree with each other and others known and unknown to the grand jury to commit offenses against the United States in violation of Title 18, United States Code, Sections 844(i), and 1341.
>
> The following overt acts were committed in furtherance of the conspiracy:
>
> 1. Since approximately 1995, defendant Mayneng Xiong (hereinafter Mayneng) operate (sic) a grocery store named TMX May's Super Market, a.k.a. TMX Food Store, a.k.a. May's Food Store (hereinafter May's), located since October 2001 at 120 South Broadway Street, Green Bay, Wisconsin. May's was damaged by fire that was started sometime before January 8, 2006 at 12:15 a.m.
>
> 2. On or about February 7, 1996, Mayneng d.b.a. May's sought to become an authorized Women, Infant and Children Program (WIC) vendor. WIC is a federally financed program to assist low income women with children.
>
> 3. Between June and November, 2005 Mayneng failed, as required by law, to provide records supporting approximately $60,000 in WIC reimbursements she had earlier received
>
> . . .
>
> All in violation of Title 18, United States Code, Sections 371 and 2.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of the defendant may strike surplusage from the indictment." "Within the discretion of the court, surplusage may be stricken from the indictment if the court finds the language

- 17 -

to be immaterial, irrelevant or prejudicial." United States v. Marshall, 985 F.2d 901, 905 (7th Cir. 1993); United States v. Andrews, 749 F. Supp. 1517, 1518 (N.D. Ill. 1990). In United States v. Bucey, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988), the court explained:

> Allegations will be stricken as surplusage only if "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." Wright & Miller, Federal Practice and Procedure § 127 (1982). Simply put, legally relevant information is not surplusage. United States v. Richter, 610 F. Supp. 480, 496 (N.D. Ill. 1985), aff'd, United States v. Mangovski, 785 F.2d 312 (7th Cir.), aff'd, United States v. Konstantinov, 793 F.2d 1296 (7th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986); See also United States v. Climatemp, Inc., 482 F. Supp. 376, 391 (N.D. Ill. 1979), aff'd, 705 F.2d 461 (7th Cir.), cert. denied sub nom., Fakter v. United States, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). Consequently, due to the exacting standard, motions to strike information as surplusage are rarely granted. See United States v. Fischbach and Moore, Inc., 576 F. Supp. 1384 (W.D. Pa. 1983); Wright & Miller, Federal Practice and Procedure § 127 (1982).

In moving to strike, the defendants assert that the government has melded two distinct sets of allegedly criminal conduct in Count One, namely: 1) the attempt to defraud the insurance company through the arson and mail fraud, and 2) the attempt to defraud the United States through Mayneng Xiong's alleged WIC fraud. They assert that, as a result, the government has blurred the nature of the offense charged.

Specifically, the defendants maintain that there is no connection alleged between the arson and wire fraud conspiracy and the alleged WIC fraud and that inclusion of the WIC allegations and § 371 invites the jury to consider an entirely distinct set of criminal acts as a basis for liability in Count One. They further assert that to the extent Count One alleges two distinct conspiracies, it is duplicitous. The defendants also contend that the WIC allegations, which predate the arson/wire fraud conspiracy, are particularly prejudicial to defendant Pao Xiong who is not linked to the alleged WIC fraud. Finally, the defendants state that the government may seek to use evidence of the alleged WIC fraud as evidence of defendant

- 18 -

Mayneng Xiong's motive to commit arson and mail fraud and that such use of alleged WIC fraud evidence falls within the parameters of Fed. R. Evid. 404(b). Thus, they assert that the issue of the admissibility of this evidence is to be determined by the trial court once the government establishes the requirements for its admissibility under Rule 404(b).

In response, the government maintains that the evidence of the alleged WIC fraud "is clearly relevant to [Mayneng] Xiong's motive to commit the arson for profit offense." (Government's Response to Mayneng Xiong and Pao Xiong's Motion to Strike Surplusage from Indictment at 5). The government states that the alleged WIC fraud could be charged pursuant to 42 U.S.C. § 1760(g) as a conspiracy to defraud the United States under 18 U.S.C. § 371; however, at this juncture, no such charge has been made. Id. at 5-6. Rather, the government explains that the charge in Count One is conspiracy "to commit offenses against the United States, namely arson and mail fraud." Id. at 5.

With respect to the inclusion of the statutory citation, the government points out that Fed. R. Crim. P. 7(c)(1) provides that the indictment "shall state for each count the official or customary citation of the statute . . . which the defendant is alleged therein to have violated." Thus, the government asserts that including the conspiracy citation, 18 U.S.C. §§ 371, conforms to the requirements of Rule 7(c)(1). The court agrees. Accordingly, the portion of the defendants' motion seeking to strike the citation to 18 U.S.C. § 371 in Count One as surplusage will be denied.

The defendants' contention regarding striking the WIC fraud allegations is more problematic. The indictment charges a conspiracy beginning in December 2005, and continuing until May 8, 2006, the date of the indictment. The allegations regarding defendant Mayneng Xiong and the WIC program predate the conspiracy charged in Count One. The

indictment states that on or about "February 7, 1996," defendant Mayneng Xiong sought to become an authorized WIC vendor. (Indictment, Count One, ¶ 2). The indictment further states that between June and November 2005, defendant Mayneng Xiong failed to provide legally required documents supporting WIC reimbursements that she had received. Id. ¶ 3. The government characterizes the WIC allegations as "fraud" and acknowledges that the WIC "fraud" could be, but has not yet been, charged pursuant to 42 U.S.C. § 1760(g) as a conspiracy to defraud the United States. The WIC–related allegations appear to involve only defendant Mayneng Xiong.

The inclusion of the alleged WIC fraud is not clearly related to the conspiracy to commit arson and mail fraud charged in Count One. The WIC fraud allegations relate to other potential charges and are not material to the charged offense. The government acknowledges that the alleged WIC fraud could be charged as a distinct offense. Their inclusion in the indictment is prejudicial because the jury could draw the inference that the defendants are accused of crimes not charged in the indictment. Therefore, upon due consideration, the court concludes that the allegations pertaining to the WIC "fraud" are neither relevant nor material to the conspiracy to commit arson and mail fraud and are inflammatory and prejudicial to the defendants. See Marshall, 985 F.2d at 905.

To the extent the government seeks to introduce evidence of the allegations to show a motive of defendant Mayneng Xiong to commit the arson, the government can provide notice pursuant to Fed. R. Evid. 404(b) of its intent to use such evidence. Such evidence may be admissible if "1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; 2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; 3) the

- 20 -

evidence is sufficient to support a jury finding that the defendant committed the similar act; 4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." United States v. O'Brien, 119 F.3d 523, 529 (7th Cir. 1997); United States v. Yusufu, 63 F.3d 505, 511 (7th Cir. 1995); see also, United States v. Smith, 103 F.3d 600, 603 (7th Cir. 1996). If challenged, the trial court would then make a determination as to the admissibility of such evidence.

Thus, while the court is well aware that motions to strike surplusage are rarely granted, the court concludes that the defendants' motions should be granted in this case. The WIC fraud allegations in paragraphs 2 and 3 of Count One of the indictment are clearly not related to the conspiracy to commit arson and mail fraud and their inclusion in the indictment is unduly prejudicial to the defendants. Accordingly, for the reasons stated herein, the motions of defendants Pao Xiong and Mayneng Xiong to strike surplusage will be granted in part and denied in part.

### PAO XIONG'S MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY OF ALLEGED CO-CONSPIRATORS' STATEMENTS (Docket #40)

Defendant Pao Xiong moves the court for a pretrial evidentiary hearing to determine the admissibility of alleged co-conspirator declarations under Fed. R. Evid. 801(d)(2)(E). Alternatively, he requests that the court enter an order compelling the government to submit a written offer of proof regarding the co-conspirator declarations which it intends to introduce under Rule 801(d)(2)(E).

In response, the government maintains that since defendant Pao Xiong's request involves the admissibility of evidence, it should be deferred to the trial court. The government

- 21 -

also asserts that the statements at issue were made in furtherance of the conspiracy charged in Count One and, therefore, are admissible against all co-conspirators.

Defendant Pao Xiong's motion addresses the basic issue of the admissibility of co-conspirators' statements pursuant to Fed. R. Evid. 801(d)(2)(E). In United States v. Santiago, 582 F.2d 1128 (7th Cir. 1978), the Court of Appeals for the Seventh Circuit held that this issue may be resolved at trial. Subsequent cases have continued to approve of this practice. United States v. Haynie, 179 F.3d 1048, 1050 (7th Cir. 1999); United States v. McClellan, 165 F. 3d 535, 553 (7th Cir. 1999); United States v. Hooks, 848 F.2d 785, 795 (7th Cir. 1988). The practice of resolving this evidentiary issue at trial has been uniformly adopted in this district. As such, the defendant's motion will be denied as untimely. See United States v. Morken, Case No. 95-Cr-178, slip op. at 36-37 (E.D. Wis. April 20, 1996); United States v. Nevarez-Diaz, Case No. 97-Cr-211, slip op. at 14-15 (E.D. Wis. Dec. 20, 1997); see also, United States v. Rodriguez, 975 F.2d 404, 409-10 (7th Cir. 1992).

### PAO XIONG'S MOTION TO SEVER COUNT FIVE OF INDICTMENT (Docket #42)

Defendant Pao Xiong has moved for severance of Count Five of the indictment from the remaining counts pursuant to Fed. R. Crim. P. 8(a) and 14(a). He asserts that Count Five, which charges him with being a felon in possession of a firearm and ammunition, arises from facts distinct from the arson, fraud and conspiracy charges in the other counts. Specifically, defendant Pao asserts that the firearms charge was misjoined under Rule 8 in that the firearm is not of "the same or similar character" as the arson, fraud and conspiracy counts and there is no "logical relationship" between the offenses. (Defendant Pao Xiong's Motion to Sever Count Five of the Indictment at 5). Defendant Pao Xiong further asserts that the offenses are

- 22 -

not "connected with or constitute parts of a common scheme or plan," citing Rule 8(a). He states that the only real connection between the charges in Counts One through Four and Count Five is the fact that evidence relating to the counts was uncovered by execution of the January 12, 2006, search warrant.

In opposing the motion pursuant to Rule 8(a), the government asserts that "a reasonable view of the evidence is that the conspirators believed that the residence was a safe haven for incriminating items, including those associated with the arson for profit scheme and the firearm." (Government's Response to Defendant's Motion for Severance at 3). The government states that joinder therefore is proper because the offenses are based on the same act or transactions and there is significant evidentiary overlap. The government further asserts that the charges are properly joined because they are part of the conspirators' common scheme or plan to store incriminating and illegally possessed items at the residence. The government concedes that the charge in Count Five "is not 'the same or similar in character' to the other counts in the indictment." Id. at 2.

Although defendant Pao Xiong challenges that propriety of joinder under Rule 8(a), it is well established that when two or more defendants are charged in a single indictment, Rule 8(b) governs the joinder of defendants and offenses. United States v. Cyprian, 23 F.3d 1189, 1193 (7th Cir. 1994) ("When two or more defendants are charged in a single indictment, Rule 8[b] governs joinder of defendants and offenses."); United States v. Briscoe, 896 F.2d 1476, 1515 (7th Cir. 1990); see also, Wright, Federal Practice and Procedure, Criminal 3d, §144 at 44 (1999) ("It has been firmly established in the case law that the propriety of joinder in cases

- 23 -

where there are multiple defendants must be tested by Rule 8[b] alone and that Rule 8[a] has no application.")[3]

Rule 8(b) provides in relevant part: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses." The question under Rule 8(b) is whether the defendants are alleged to have participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. If the acts of each defendant are performed according to a common scheme or plan, joinder is proper. Cyprian, 23 F.3d at 1194.

Rule 8(b) does not require that the defendants be charged with identical crimes. United States v. Pigee, 197 F.3d 879, 891 (7th Cir. 1999) (citing United States v. Marzano, 160 F.3d 399, 401 [7th Cir. 1998]). Rather, the "focus is on the underlying acts that constitute criminal offenses. The defendants must be charged with crimes that well up out of the same series of such acts, but they need not be the same crimes." Id. (citations omitted). Thus, the propriety of joinder of defendants "depends on the meaning of 'same series of acts or transactions.' The usual meaning is acts or transactions that are pursuant to a common plan or scheme, which is to say (in the usual case) that the acts or transactions are part of a single conspiracy." United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1985) (citations omitted). So viewed, Rule 8(b) codifies the long-standing practice of trying co-conspirators together, but does not open the door to mass trials.

---

[3]The court is aware, however, that some courts, while finding it unnecessary to address the issue, have suggested that Rule 8(a) applies when a defendant in a multi-defendant case challenges only the joinder of the offenses against him. See Wright, Federal Practice and Procedure: Criminal 3d, § 144 at 45 (1999) (citing cases). Given the prevailing view, however, the court will proceed to analyze the issue under Rule 8(b).

Case 1:07-cr-00112-WCG   Filed 09/14/07   Page 24 of 31   Document 62

In this case, all the defendants are charged as co-conspirators with conspiring to commit arson and mail fraud. Defendants Mayneng Xiong and Pao Xiong also are charged in substantive counts with mail fraud and arson. Their alleged acts were done pursuant to a common scheme or plan. Therefore, joinder of the defendants under Rule 8(b) is proper in this case. Since the court concludes that the defendants were properly joined pursuant to Rule 8(b), the court must next address whether severance of Count Five is required by Rule 14 because of prejudice. See Velasquez, 772 F.2d at 1353.

Once the indictment is found to meet the criteria for joinder under Rule 8, all further issues of joinder are controlled by Rule 14. See United States v. Balzano, 916 F.2d 1273, 1280 (7th Cir. 1990); United States v. Garner, 837 F.2d 1404, 1412 (7th Cir. 1987). Pursuant to Rule 14, the district court may order separate trials on individual counts "[i]f it appears that a defendant or the government is prejudiced by a joinder of [the] offenses" for a single trial. United States v. Alexander, 135 F.3d 470, 477 (7th Cir. 1998) (quoting Fed. R. Crim. P. 14); United States v. Hogan, 886 F.2d 1497, 1506 (7th Cir. 1989).

"A mere showing of some prejudice usually has been insufficient, for qualitatively, it must be the most compelling prejudice against which the trial court will be unable to afford protection." United States v. Madison, 689 F.2d 1300, 1305 (7th Cir. 1982) (quoting United States v. Edwards, 488 F.2d 1154, 1160 [7th Cir. 1974]). "[P]rejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts." United States v. Quilling, 261 F.3d 707, 715 (7th Cir. 2001) (quoting United States v. Windom, 19 F.3d 1190, 1198 (7th Cir. 1994) (other citation omitted).

Although the government acknowledges that Count Five is not similar to the other counts, it nonetheless asserts that the offenses are based on the same act or transactions

- 25 -

and involve significant evidentiary overlap, citing United States v. Fortenberry, 919 F.2d 923, 926 (5th Cir. 1990)[4] (Fortenberry III).  In Fortenberry, III the defendant was charged with conspiracy to commit arson, possession of an unregistered firearm and transportation of an undeclared firearm on a commercial airliner.  The court concluded that joinder of the transportation of the firearm charge was proper under Rule 8(a) under either the transaction requirement or the "same or similar character" requirement.  The firearm at issue was discovered during an arson and weapons investigation.

Although not cited by the government, the court, in its original opinion, explained its basis for denying the defendant's motion to sever the count:

> Fortenberry was transporting the gun to Jackson where the other offenses charged in the indictment were committed, and the government argued throughout the trial that the three charges were all linked by a plan of revenge against persons in Jackson.  Given the broad construction of rule 8 and the logical link between the three counts in the indictment, we must conclude that the trial court did not err by refusing to sever under rule 8.

United States v. Fortenberry, 914 F.2d 671, 675 (5th Cir. 1990) (Fortenberry II).  In this case, the only arguable logical link between Count Five and the remaining counts is that the firearm and ammunition were discovered during the search related to the arson investigation.

The defendant argues that United States v. Singh, 261 F.3d 530 (5th Cir. 2001), is more analogous to the facts of this case.   In Singh, the defendant, who was charged with harboring aliens for commercial gain and with possession of a firearm by a convicted felon, challenged the denial of his motion for severance of the counts.  In holding that the district abused its discretion in denying the severance motion, the appeals court explained: "Because

---

[4]The opinion addressed arguments raised by the defendant on a petition for rehearing.  Previously, the court had reversed the defendant's convictions and remanded for a new trial because of evidentiary errors. United States v. Fortenberry, 860 F.2d 628 (5th Cir. 1988) (Fortenberry I)

there was no evidence that Singh's alleged possession of the gun had any connection to his housing and hiring of illegal aliens, the gun count was unrelated to the harboring count. Thus, initial joinder was not appropriate." Id. at 533. Similarly, in this case, there is a dirth of evidence that defendant Pao Xiong's possession of the firearm had any connection to the conspiracy or arson and mail fraud charged in the indictment.

In United States v. Carnes, 309 F.3d 950, 958 (7th Cir. 2002), the court held that the charge of illegal wiretapping of the defendant's girlfriend's telephone should have been severed from charges of felon in possession of a firearm and witness tampering, even though evidence of wiretapping was found in the same search as evidence of the crimes and even though both the wiretapping and witness tampering involved the girlfriend. The court stated: "To allow a connection to be based upon the fact that evidence of multiple, unrelated crimes was obtained during the same search would do away with the requirement that the acts be of 'similar character.'" Id.

In this case, the only link between the firearm and the conspiracy, arson and mail fraud charges is the discovery of the firearm during the search of the residence on David Street. Despite the government's contention that there is "significant" evidentiary overlap among the charges, the only connection cited is the execution of the warrant. Thus, the evidentiary overlap is slight. The government merely argues that the residence was used to hide incriminating items, including the firearm. There is no indication that the possession of the firearm was part of the common plan to commit arson and mail fraud. Moreover, the indictment itself offers nothing more from which a person might permissibly infer a connection between the firearm's possession charge and the other criminal charges. The court must focus on the face of the indictment in deciding whether the charges are properly joined.

- 27 -

<u>United States v. Hubbard</u>, 61 F.3d 1261,1270 (7th Cir. 1995); <u>see</u> <u>also</u>, Coleman, 22 F.3d at 134.

Here, defendant Pao Xiong would be unfairly prejudiced by joinder of Count Five with the remaining counts of the indictment. Given the firearms charge, the government will need to present evidence to the jury of his prior felony conviction. The firearm and ammunition will also be introduced into evidence. Whether accurate or not, guns in our society today often suggest violence. If Count Five were severed, absent defendant Pao Xiong testifying, evidence of his prior conviction would not be revealed to jury, nor is it likely that possession of the gun would be admissible. Given the lack of a logical connection between the charges in Count Five and the remaining counts and nature of the charge in Count Five, defendant Pao Xiong would be substantially prejudice if Count Five remained in this indictment.

Accordingly, the court concludes that allowing the government to introduce evidence that defendant Pao Xiong was a convicted felon and possessed of a firearm and ammunition would result in substantial prejudice to him within the meaning of Rule 14. Therefore, for the reasons stated herein, defendant Pao Xiong's motion to sever Count Five of the indictment will be granted.

### PAO XIONG'S MOTION TO SEVER DEFENDANT (Docket #43)

Defendant Pao Xiong moves the court for an order severing his trial from that of his co-defendants based on the contention that the admission of co-defendants' testimonial statements against him at trial would violate <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) and his rights under the Confrontation Clause. He sets forth a list of statements which his co-defendants made to law enforcement officers during the investigation of the suspected arson

- 28 -

and statements made to representatives of Society Insurance. The government maintains that admission of the co-defendants' statements is proper because the statements are in furtherance of the alleged conspiracy and, therefore, as non-hearsay they are not barred by Crawford.

In his reply brief, defendant Pao Xiong concedes that the court's decision in United States v. Jenkins, 419 F.3d 614 (7th Cir. 2005) defeats his argument. However, he does not concede that the statements at issue are statements made in furtherance of a conspiracy as set forth in his motion seeking a Santiago hearing.

In Jenkins, the defendants challenged the evidentiary foundation for tape-recorded conversations asserting that their admission into evidence violated their rights under the Confrontation Clause as set out in Crawford. The court rejected their contention stating:

> As to the Confrontation Clause argument, *Crawford* does not apply. The recordings featured the statements of co-conspirators. These statements are not hearsay. *Crawford* did not change the rules as to the admissibility of co-conspirator statements.

419 F.3d at 618.

In light of the foregoing, defendant Pao Xiong's motion to sever defendants for trial will be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS RECOMMENDED** that the United States district judge enter an order **denying** defendant Pao Xiong's motion to suppress regarding the search of 310 David Street. (Docket #39).

- 29 -

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Mayneng Xiong's motion to suppress regarding the search of 310 David Street. (Docket #45).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Pao Xiong's motion to suppress regarding identical search warrants for the search of 310 David Street and the Dodge Van. (Docket #38).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Mayneng Xiong's motion to suppress regarding identical search warrants for the search of 310 David Street and the Dodge Van. (Docket #46).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **granting** in part and **denying** in part defendant Pao Xiong's motion to strike surplusage from the indictment. (Docket #41).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **granting** in part and **denying** in part defendant Mayneng Xiong's motion to strike surplusage from the indictment. (Docket #44).

**IT IS ORDERED** that defendant Pao Xiong's motion for pretrial determination of admissibility of alleged co-conspirators' statements be and hereby is **denied**. (Docket #40).

**IT IS FURTHER ORDERED** that defendant Pao Xiong's motion to sever Count Five of indictment be and hereby is **granted**. (Docket #42).

**IT IS ALSO ORDERED** that defendant Pao Xiong's motion to sever defendant for trial be and hereby is **denied**. (Docket #43).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General L. R. 72.3 (E.D. Wis.), whereby written objection to any recommendation or order herein or part thereof may be filed within ten days of service of this order.  Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 14th day of September, 2007.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge